Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

Scott M. Harris
State Bar No. 011524
Scott M. Harris, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:   (602) 252-7400
Facsimile:    (602) 795-5610
email: harris@smharrislaw.com

*Attorneys for Plaintiff Joseph Feeley*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Joseph Feeley,<br><br>             Plaintiff,<br><br>      v.<br><br>Life Insurance Company of North America; Gannett Company, Inc.; Gannett Company, Inc. Disability Plan,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Joseph Feeley (hereinafter referred to as "Plaintiff"), by and through his attorneys, Scott E. Davis and Scott M. Harris, and complaining against the Defendants, he states:

-1-

*Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2.     Plaintiff is a resident of Maricopa County, Arizona.

3.     Upon information and belief, Gannett Company, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by Life Insurance Company of North America (hereinafter referred to as "LINA").  The specific LINA group disability policy is known as Group Policy No.: FLK-980081 (hereinafter referred to as the "Policy").  The Company's purpose in sponsoring, administering and purchasing the LINA policy was to provide disability insurance for its employees.  Upon information and belief, the LINA policy may have been included in and a part of an employee benefit plan, specifically named the Gannett Company, Inc. Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.     Upon information and belief, LINA functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the

Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

5. Upon information and belief, Plaintiff believes LINA operated under a conflict of interest in evaluating his long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit*, LINA's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of his disability benefits.

6. The Company, LINA and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits he may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about August 28, 2011 due to serious medical conditions and was unable to work in his designated occupation as a Pressman. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10. Following his disability, Plaintiff applied for short term disability benefits which were approved, paid and have been exhausted. Plaintiff then filed for long term disability benefits under the relevant policy which was administered by LINA, meaning it made the decision with regard to whether Plaintiff was disabled.

11. Upon information and belief, the relevant LINA policy and definition of disability governing Plaintiff's long term disability claim is as follows:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is unable to perform the material duties of his or her Regular Occupation.
>
> After Disability Benefits have been payable for 12 months, the Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
>
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
>
> 2. unable to earn 50% or more of his or her Indexed Covered Earnings.

12. In support of his claim for long term disability benefits, Plaintiff submitted to LINA medical records from his treating physicians supporting his disability as defined by the relevant LINA policy.

13. LINA approved Plaintiff's long term disability claim and paid his long term disability benefits for a total of twelve months, or until February 26, 2013.

14. In a letter dated February 7, 2013, LINA informed Plaintiff it was terminating his long term disability benefits effective February 26, 2013.

15. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's February 7, 2013 denial and submitted additional medical, vocational and lay witness evidence demonstrating he met any definition of disability set forth in the relevant LINA policy.

16. Plaintiff submitted to LINA a narrative letter dated July 29, 2013 from his current treating physician, a board certified orthopedic surgeon, who opined, "I also believe [Plaintiff] would be unable to work at any type of sedentary work, so I think it precludes any gainful employment. I believe this would be on a permanent basis."

17. In support of his appeal, Plaintiff submitted to LINA a narrative letter dated August 19, 2013 from his current treating physician, a board certified family physician, who opined, "I agree that '[Plaintiff] would be unable to perform the weight bearing demands (walking or standing) and material handling demands of even sedentary work on a regular and consistent basis.' [It] is reasonable to assume his disability started on August 29, 2011."

18. Plaintiff also submitted to LINA a Functional Capacity Evaluation report dated July 2, 2013 wherein after an extensive evaluation, a qualified physical therapist determined, "…I do not believe that [Plaintiff] could perform even SEDENTARY work due to the additional limitations he is experiencing with his right knee and low back" (original emphasis).

19. Further supporting his appeal, Plaintiff submitted to LINA a vocational report from a certified vocational expert dated August 14, 2013, who after reviewing Plaintiff's medical evidence and interviewing Plaintiff concluded, "In summary, [Plaintiff] fully meets any definition of disability set forth in Cigna's disability policy."

20. In addition to the medical records and reports submitted to LINA, Plaintiff submitted sworn affidavits from his wife and prior co-worker who both confirmed Plaintiff is unable to work in any occupation and his medical condition has not improved in any way since his date of disability.

21. During the administrative review of Plaintiff's claim, he was approved for and is receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

22. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of August 27, 2011. Plaintiff submitted to LINA a copy of his August 16, 2013 Notice of Decision – Fully Favorable and August 24, 2013 Notice of Award from SSA. After holding a hearing and listening to Plaintiff's testimony, as well as reviewing substantially the same evidence as was presented to Cigna during Plaintiff's appeal, an independent Administrative Law Judge (ALJ) found that Plaintiff is disabled.

23. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the LINA policy for the first 12 months of disability and substantially similar to the policy's definition of disability after the first 12 months of disability. Therefore, the SSA and ALJ's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the lawfulness of LINA's decision to deny Plaintiff's benefits and in the process, not properly evaluating SSA's decision or giving it appropriate weight in its determination of Plaintiff's claim.

24. As part of its review of Plaintiff's claim for long term disability benefits, LINA obtained a medical records only "paper review" of Plaintiff's claim from Dr. Joseph Rea.

25. Upon information and belief, Plaintiff believes Dr. Rea is a long time medical consultant for the disability insurance industry and LINA. As a result, Plaintiff believes Dr. Rea has an incentive to protect his own consulting relationship with the disability insurance industry and LINA by providing medical records only paper reviews, which selectively

review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

26. In a letter dated September 6, 2013, Plaintiff invited LINA and any of its retained medical professionals to engage in a dialogue with his treating physicians, by way of written communication through undersigned counsel. Neither LINA nor Dr. Rea ever engaged Plaintiff in a dialogue and/or submitted any communication to counsel to be directed to Plaintiff's treating physicians.

27. In a letter dated November 26, 2013, LINA notified Plaintiff it was denying his claim for long term disability benefits.

28. Prior to its November 26, 2013 denial, LINA never shared with Plaintiff the report authored by Dr. Rea and never engaged Plaintiff or his treating medical providers in a dialogue so he could either respond to the report and/or perfect his claim. LINA's failure to provide Plaintiff with the opportunity to respond to Dr. Rea's report precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

29. Pursuant to 29 U.S.C. §1133, on February 20, 2014, Plaintiff appealed LINA's November 26, 2013 denial and submitted additional evidence demonstrating he met any definition of disability set forth in the relevant LINA policy.

30. In support of his claim, Plaintiff submitted to LINA a November 12, 2013 letter from the Gannett Pension Center informing him that his claim to receive pension benefits under the Gannett Retirement Plan at the disability rate of age 65 had been approved. In order to be eligible for this benefit, the Gannett Pension Center found that Plaintiff was disabled and unable to work in any occupation.

31. In letters dated February 26, 2014 and March 18, 2014, LINA informed Plaintiff it was not accepting his February 20, 2014 appeal, due to what it considered a lack of additional medical documentation; therefore, Plaintiff filed this Complaint.

32. Plaintiff was informed by LINA in its November 26, 2013 denial letter he had the right to bring a legal action for benefits under ERISA following an adverse benefit determination.

33. In a letter dated February 25, 2014, LINA informed Plaintiff he had an overpayment of $15,412.33 on his long term disability claim, due to his SSA approval and receipt of SSA disability benefits.

34. In good faith, Plaintiff fully paid the overpayment to LINA. In a letter dated March 31, 2014, LINA notified Plaintiff his overpayment had been paid in full and his overpayment file was closed.

35. Upon information and belief, LINA's February 7, 2013 and November 26, 2013 denial letters confirm it failed to provide a full and fair review and in the process committed several procedural violations pursuant to ERISA because it completely failed to credit, reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's reliable evidence.

36. In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in his best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim

37. LINA failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim.  LINA's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claims is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

38. Plaintiff believes LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate his claim; failing to have him examined by a medical professional when the policy allowed for an examination; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by him and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the impact the combination of those diagnoses and impairments would have on his ability to work; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

39. Plaintiff further believes the reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles LINA undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be the reason the Company and/or

---

denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

-9-

1  Plan retained LINA to insure and administer Plaintiff's disability claim. LINA's denial of
2  Plaintiff's claim when the Gannett Pension Center as well as SSA and an independent ALJ
3  found he is disabled is evidence that LINA's conflict of interest influenced its decision.
4  Moreover, LINA's failure to approve Plaintiff's claim notwithstanding his SSA approval
5  and the fact that Plaintiff fully paid his SSA overpayment is additional evidence its conflict
6  of interest influenced the decision.

7  40. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of LINA and any individual who reviewed his claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest as well as any ERISA procedural violations which may have impacted or influenced LINA's decision to deny his claim.

8  41. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by LINA as referenced herein are so flagrant they justify *de novo* review.

9  42. As a direct result of LINA's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents.

43. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

44. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff his long term disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the LINA policy and/or Plan from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as he meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 17th day of September, 2014.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
     Scott E. Davis
     Attorney for Plaintiff